UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAHUL K. (A# 241-891-741),<br>Petitioner,<br>v.<br>LYONS, et al.,<br>Respondents. | No. 1:26-cv-00323-TLN-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a former federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

This case has already had a long and complex history. For the reasons provided below, the undersigned finds that Petitioner's initial detention without a pre-deprivation hearing was unlawful, that he has not been ordered removed subject to expedited removal authority, and that there is accordingly no present authority for his detention. The undersigned also recommends the entry of declaratory and injunctive relief to address these findings.

**I. Factual and Procedural History**

Petitioner, a citizen of India, entered the United States without authorization on September 17, 2022. ECF 1 at 1, 23. Department of Homeland Security ("DHS") officials apprehended Petitioner upon entry and released him on his own recognizance. Id. The record does not indicate that DHS initiated expedited removal proceedings or placed him in conventional removal

proceedings at that time. During the subsequent three years, Petitioner complied with the terms of release. Id. at 1, 23. He submitted an asylum application to U.S. Citizenship and Immigration Services ("USCIS") on February 24, 2023. Id.

On November 24, 2025, when Petitioner appeared at a routine check-in with an Immigration and Customs Enforcement ("ICE") officer, ICE officers detained him and initiated expedited removal proceedings. ECF No. 18-1; 21-1. A USCIS officer also determined that Petitioner did not demonstrate a credible fear of persecution or torture in India. ECF No. 1 at 1, 23-24. An immigration judge reviewed and affirmed that finding on December 23, 2025. ECF No. 12-1.

Petitioner filed a petition for U nonimmigrant status ("U visa") with USCIS on January 12, 2026. ECF No. 1 at 2, 24.

On January 15, 2026, Petitioner filed a petition for writ of habeas corpus and motion for temporary restraining order ("TRO"), alleging that the November 2025 detention after a prior release violated the Immigration and Nationality Act, the Administrative Procedures Act, and his Fifth Amendment right to due process. ECF No. 1, 2. Chief District Judge Nunley granted the TRO, ordered Petitioner's immediate release, and enjoined and restrained Respondents from re-detaining Petitioner absent a pre-deprivation hearing. ECF No. 4. Judge Nunley later issued a preliminary injunction restraining and enjoining Respondents from re-detaining Petitioner absent compliance with constitutional protections. ECF No. 6. In compliance with the order, Respondents released Petitioner on January 18, 2026. ECF No. 8-1.

Judge Nunley then referred the habeas petition to the undersigned, who directed the parties to brief the impact of what appeared to be a final order of removal on the merits of the habeas petition. ECF No. 11. Respondents' answer to the petition claimed that Petitioner is an "undisputed arriving alien" properly subject to detention and expedited removal pursuant to 8 U.S.C. §1225(b)(1)(B)(iv) and received the process due to him under the statute. ECF No. 12. Respondents also requested that the Court dissolve the preliminary injunction, arguing that it runs afoul of 8 U.S.C. § 1252(g) and places hurdles for the government to exercise its authority to execute a final order of removal. Id.

On August 13, 2026, Petitioner appeared for a pre-deprivation hearing before an immigration judge ("IJ") who determined that Respondents had demonstrated, by clear and convincing evidence, that Petitioner should be detained without bond. ECF No. 20 at 2. Petitioner appealed the IJ's order. Id. at 3. Petitioner then filed a second amended petition ("SAP"). ECF No. 21. The SAP challenged the existence and validity of the purported expedited removal order, alleging that Petitioner was not properly subject to § 1225(b) proceedings because he had been present in the U.S. for over two years, and noting that Form I-860—the notice and order of expedited removal—was not properly executed. Id. That SAP also alleged that Petitioner's detention violates a district court's order in Immigration Center for Women and Children v. Noem, No. 2:25-cv-09848-AB-AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026), appeal docketed, No. 26-3961 (9th Cir. June 22, 2026) ("ICWC"), which issued a nationwide stay on ICE's 2025 policy of no longer considering pending U-visa applications in its detention and removal decisions. Id. Respondents replied that Petitioner's claims are not ripe for review because he is not currently detained, and that 8 U.S.C. § 1252(e) and Dep't of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020) foreclose his claims regarding the purported expedited removal order. ECF No. 24.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to non-citizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [non-citizens] must

implicate the Due Process Clause of the Fifth Amendment.”).

**B. Statutory Immigration Framework**

Certain non-citizens arrested at or near the border without valid entry documents may be removed “without further hearing or review” pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). If such non-citizen “indicates either an intention to apply for asylum ... or a fear of persecution,” then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). The non-citizen is to remain detained throughout proceedings or, if found not to have a credible fear of persecution, until removed. 8 U.S.C. §§ 1225(b)(1)(B)(ii); 1225(b)(1)(B)(iii)(IV).

Judicial review of §1225(b)(1) orders in habeas corpus proceedings are limited to determinations of whether the petitioner is a non-citizen, whether the petitioner was ordered removed under such section, and whether the petitioner can prove that they have been lawfully admitted as a permanent resident or refugee. 8 U.S.C. § 1252(e)(2).

Non-citizens who are already present in the U.S. but are subject to removal proceedings may be detained pursuant to 8 U.S.C. § 1226(a). Unlike those detained under § 1225(b)(2), where detention is mandatory, those detained under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2).

**III. Analysis**

**A. Detention Violated Due Process**

Petitioner’s initial habeas petition raised a due process challenge to the November 2025 detention. In response to a motion for TRO, Judge Nunley granted release and a preliminary injunction against future detention without a pre-deprivation hearing. He then referred the matter to the undersigned to make findings and recommendations regarding the due process claim. The SAP raises effectively the same due process claim, among others. The undersigned will first address that due process claim.

In reviewing Petitioner’s due process challenge to his November 2025 detention, the Court turns first to the question of whether Petitioner had a protected liberty interest in freedom from detention. Numerous courts, including those in this district, have found that individuals,

like Petitioner, who were paroled and/or released from ICE custody have a protected interest in remaining out of custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing Petitioner to remain in the community for over five years strengthened Petitioner's liberty interest). For over three years, Petitioner remained "at liberty relying on that determination." F.S.S.M. v. Wofford, No. 1:25-cv-01518-TLN-AC, WL 3526671, at *5 (E.D. Cal. Dec. 9, 2025). Accordingly, the undersigned finds that Petitioner has a protected liberty interest and properly invoked the Due Process Clause to seek relief in his individualized circumstances.

Having so found, the undersigned applies the framework articulated in Mathews v. Eldridge, 424 U.S. 319 (1976) to determine whether Petitioner's re-detention violated his due process rights. See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved, including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in maintaining his out-of-custody status. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner remained out of custody for over three years. During that time, he applied for asylum, a necessary preliminary step in obtaining lawful permanent residence in the U.S. His pursuit of lawful permanent status supports his private liberty interest. See Salazar v. Casey, No. 25-CV-2784, 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner has an interest in…attending hearings to seek a visa."); see also Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's]

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor favors Petitioner, as his re-detention required a pre-deprivation hearing in which the burden of proof lies with the government. The risk of erroneous deprivation is high when the non-citizen has not received a bond or custody hearing to determine whether there is any valid basis for detention after a prior release. Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents did not allege any changed circumstances that would have justified re-detention without a hearing. See Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) ("[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial.") (abrogated on other grounds.)

Under the third Mathews factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. Here, Respondents did not articulate any legitimate interest to support Petitioner's November 2025 arrest and detention without a pre-deprivation hearing. The effort and cost required to provide Petitioner with procedural safeguards before re-detention would have been minimal, and Respondents were indeed able to provide such a hearing after this Court's order. See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). In fact, "it is likely that the cost to the government of detaining [Petitioner] pending any bond hearing would significantly exceed the cost of providing [him] with a pre-detention hearing." Pinchi v. Noem, 792 F. Supp. 3d at 1036.

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in detention without first demonstrating that the detention was necessary to protect the community or ensure Petitioner's appearance in removal proceedings. A pre-deprivation hearing was required to satisfy due process. See Guillermo M.R. v. Kaiser, No. 25-cv-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025); Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Pinchi, 792 F. Supp. 3d 1025; Ortega v.

Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019); Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The absence of such pre-deprivation hearing before the November 2025 detention violated Petitioner's due process rights.

Pursuant to Judge Nunley's preliminary order, Respondents have since provided a pre-deprivation hearing in which an IJ found Petitioner poses a risk of flight, due in part to a purported expedited removal order. Respondents have requested that the Court dissolve the injunction to allow for unencumbered execution of a purported removal order. The undersigned therefore must next determine whether Respondents may lawfully detain and/or remove Petitioner.

**B. No Statutory Basis for Current Detention or Removal**

**i. Ripeness**

Respondents argue that Petitioner's claims in the SAP are not ripe for review because Petitioner is not currently detained. A claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). In considering ripeness, the Court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed. 681 (1967). Here, Petitioner challenges a purported expedited removal order in addition to prospective detention. While it is theoretically possible that Respondents could choose not to execute what they view as a final order of removal, they have made clear their intention to do so. Respondents have represented to this Court that Petitioner is subject to detention pursuant to an expedited removal order, and they obtained a pre-deprivation hearing to justify future detention.[1] They have even complained that

[1] Respondents also argue that issuance of a U-visa would prevent Petitioner's removal, making Petitioner's claims regarding expedited removal moot. However, adjudication of the U-visa application will take years, and approval of the visa is far from certain. Meanwhile, Respondents have not represented that they will follow prior ICE policy guidance instructing ICE to consider

this Court's order impedes their ability to execute the order. Because Respondents have not disclaimed their ability and intention to imminently detain and remove Petitioner pursuant to an expedited removal order, the undersigned considers the purported expedited removal order—and detention to effect removal under that order—to be far from hypothetical. These circumstances present a concrete injury that is ripe for this Court's consideration.[2]

**ii. No expedited removal order exists**

Respondent maintains that Petitioner is subject to detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(iv), which states that any non-citizen subject to expedited removal "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Petitioner claims – and the undersigned agrees – that no valid expedited removal order exists.[3]

This Court may determine whether an expedited removal order exists. While 8 U.S.C. § 1252(e) limits judicial review of expedited removal orders under § 1225(b)(1), it explicitly allows judicial review in habeas proceedings to determine "whether the petitioner was ordered removed under such section." 8 U.S.C. § 1252(e)(2)(B). In Claim 10, Petitioner is *not* challenging the *validity or procedures* of § 1225(b); those would be precluded by §1252(e). See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020).[4] Rather, Petitioner challenges the

---

U-visa petitions when making detention and removal decisions, rather than ICE Policy No. 11005.4, Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits (Jan. 30, 2025) ("2025 ICE Policy") (rescinding prior guidance) which is currently the subject of litigation. See ICWC, 2026 WL 1455004.

[2] As the undersigned recommends relief under clams regarding the purported expedited removal order, it will not address Petitioner's claims regarding ICWC class membership, other than to note that Respondents initially detained Petitioner *before* he submitted the U-visa application, released him shortly after, and have not stated whether they intend to consider Petitioner's pending U-visa application (in accordance with policies prior to the 2025 ICE Policy) in future enforcement actions.

[3] Respondents, citing Petitioner's initial petition (ECF No. 1 at 2 ¶¶ 2-6) assert that "it is not disputed" that an expedited removal order was issued. Petitioner does dispute whether an expedited removal was issued. Claim 10 in Petitioner's SAP expressly claims, "Petitioner does not have a valid expedited removal order because the government failed to comply with its regulation." ECF No. 21 at 37-38, ¶ 159.

[4] The undersigned is not considering Petitioner's additional claims, which may be barred by § 1252, unless the Suspension Clause requires review of them. However, it is deeply concerning

*existence* of an expedited removal order.

Petitioner submitted two copies of ICE Form I-860, which is the form used to initiate and complete an expedited removal order. ECF No. 18-1; ECF 21-1. Neither copy of the form appears to be properly executed. The section entitled "Determination of Inadmissibility" appears complete and bears the name, title, and signature of the immigration officer. This completed top portion may sufficiently demonstrate ICE's *determination* that Petitioner is inadmissible under 8 U.S.C. § 1227(a)(7)(a)i)(I) and therefore *subject* to removal. However, the section entitled "Order of Removal Under Section 235(b)(1) of the Act" is incomplete. An expedited removal regulation, 8 C.F.R. § 235.3(b)(2), requires a record of facts to be reviewed by a supervisor and served on the non-citizen, who must then acknowledge receipt by signing I-860 form. Petitioner's I-860 form lacks the immigration officer's signature, the supervisor's signature (or a check in the box indicating that the supervisor's concurrence was obtained by telephone or other means and the supervisor's signature is unavailable), and the Petitioner's signature. The proof of service is not filled out at all. Even without considering 8 C.F.R. § 235.3(b)(2)'s requirements, the undersigned cannot deem an incomplete, unsigned, unserved document sufficient evidence to demonstrate the existence of an expedited order of removal.

Respondents have provided no additional evidence that ICE ever issued a removal order against Petitioner, nor that Petitioner has ever been placed in removal proceedings. Therefore, neither § 1225 nor § 1226 authorize Respondents to detain or remove Petitioner.[5]

## IV. Recommendations

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED;
2. The Court enter declaratory judgment that no expedited removal order pursuant to 8 U.S.C. § 1225(b)(1) exists against Petitioner;

---

that DHS purported to issue an expedited removal order against Petitioner, despite Petitioner's undisputed presence in the United States for more than two years. By statute, expedited removal is only available when a noncitizen has been present in the United States for less than two years. See 8 U.S.C. 1225(b)(1)(A)(iii)(II).

[5] The IJ's determination that detention is warranted due to flight risk is then irrelevant, as there is no longer statutory authority to detain Petitioner at all.

3. Respondents be PERMANENTLY ENJOINED AND RESTRAINED from removing Petitioner from the United States pursuant to any purported expedited removal order previously issued; and

4. Respondents be PERMANENTLY ENJOINED AND RESTRAINED from detaining Petitioner absent a pre-deprivation showing before an immigration judge, by clear and convincing evidence, that:

a. Detention is authorized by statute, and, if not mandatory, that detention is warranted because Petitioner poses either a danger to the community or a risk of flight; and

b. Any decision to detain, place in removal proceedings, and/or remove Petitioner was done in compliance with and consideration of any controlling policy memorandums and Court orders relating to Petitioner's U-visa application and/or ICWC class membership.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 9, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE